## Fitzpatrick v. L. & N. R. R. Co.

(Decided September 20, 1911.)

### Appeal from Fayette Circuit Court

1.   Torts—Peremptory Instruction.—Where one of a crew operating a handcar placed a gunny sack filled with coal, upright upon the handcar, but in such a way as not to interfere with the operation of the machinery of the car, and in full view of the plaintiff, the railroad company is not liable when the sack of coal toppled over and caused the plaintiff to release his hold upon the handle brake, and he thereby fell from the car and was injured.

2.   Negligence—Assumed Risk.—If the placing of the coal sack upon the car be considered negligent upon the part of the defendant, nevertheless the plaintiff, who continued operating the car, with full knowledge of the conditions that existed, assumed the risk of the sack toppling over as it did.

JAMES H. MINOGUE and KIMBALL & HUNTER for appellant.

SHELBY & SHELBY and B. D. WARFIELD for appellee

Opinion of the Court by Judge Miller—Affirming.

On April 14, 1908, the appellant and three other section hands, under the superintendence of McCarty, the section foreman, had gone upon a hand car to Kenney's Station on the defendant's road between Paris and Lexington. About four o'clock in the afternoon the crew of five men left Kenney's Station upon the hand car, going southwardly towards Lexington. When they reached Hutchison's Station they stopped and waited a short time on account of rain. While at that point, Tutt, one of the crew, brought and placed upon the car a gunny sack containing two or three bushels of coal. He placed the sack upright on the side near the handle bar, slightly toward the Lexington end of the car. Shortly thereafter the crew continued its journey southwardly, the appellant working the handle bar, and riding backward. They were going at the rate of eight or nine miles an hour; and, when they had gone about one mile from Hutchison's Station, the appellant fell or was thrown backward from the car upon his back, and on the track in front of the car, which ran on to his body, doubling up his legs against his chest, and inflicting serious and permament injuries. He brought this suit for damages for the injury; and upon the conclusion of his testimony the court peremptorily instructed the jury to find for the defendant.

According to appellant's theory, the defendant was guilty of negligence in so loading the hand car with the sack of coal as to make the car dangerous; and, the sack having fallen over, it was struck by the handle bar operated by appellant with such violence as to knock his hands loose from the handle bar and throw him backward off the car as above indicated.

It had been raining nearly all day, and, according to appellant's witness Meyers, one of the crew, rain was falling at the time of the accident. Appellee contends that the handle bar had become thoroughly wet and soaked to such a degree that appellant allowed his hands to slip from it, and was in that way thrown from the car. Appellant claims that McCarty, the foreman, assented to Tutt's placing the sack of coal upon the car; but the evidence fails to show that he did anything more than remain silent with respect to that act on Tutt's part.

The appellant and John Meyers, one of the crew, were the only witnesses who testified as to the accident.

The coal sack belonging to Tutt, was placed on the floor beyond the reach of the handle bars, and nearly opposite the brake. It in no way interferred with the working of the lever on account of the casing which surrounds it. The lever was operated by four men, two of whom worked facing forward, and two facing backward. No one saw the sack of coal fall over, or the handle bar strike it. Meyers was riding on the rear of the car, facing the front and was facing appellant and the sack of coal. Moreover, Meyers, who had hold of the opposite handle bar from the appellant, felt no jerk or jar until after appellant had fallen from the car; and both handle bars being connected with the same lever, it is argued that the sack could not have struck the handle bar that appellant had hold of, or have been struck by it without the jar from it being felt by Meyers. Appellant says the first he knew of the sack of coal falling over, was his feeling it on his feet, but that it was so sudden he could give no adequate explanation of the accident.

Assuming, however, that the appellant's version of the accident is correct, we are of opinion that the court properly sustained appellee's motion for a peremptory instruction in its favor. The only negligence claimed by appellant was in allowing the sack of coal to be placed upon the hand car. It was placed in plain view of all the men on the hand car, and in a position where it came in contact with none of the mechanism of the car. It did not crowd the car; it did not take up an unusual amount of room, and was placed in a position against the lever casing where it in no way interfered with the operation of the car.

Appellant relies principally upon Ward v. L. & N. R. R. Co., 23 Ky. L. R., 1326, for a reversal. In that case the appellant, as a section hand, had been at work with others under the section foreman clearing up a wreck. At the close of the day the foreman directed the men to pile upon the hand car some remnants of lumber and splinters, saying they would make a fine lot of kindling. The foreman then directed the men to get on the car and go home. They did so, but before reaching their destination a piece of the wood caught in the cogs of the hand car and threw it from the track, breaking Ward's leg. In that case, as in this, the trial court peremptorily instructed for the defendant; and, in re-

versing the ruling in the Ward case, this Court said:

"The section foreman had charge of the car and was in command of the men. It was his duty before starting his car to see that it was in a safe condition to be operated. The short pieces of kindling which were piled above the hole in which the lever worked might reasonably be anticipated to work down in the open hole and bring about just the result that happened. There was, therefore, evidence from which the jury might have inferred negligence on the part of the section boss in starting his car in this condition. * * * The plaintiff did not have charge of the car; it was not his duty to see that it was properly loaded or in a safe condition to be operated. It was his duty to obey the orders of his superior, and as below explained, he had a right to rely upon the presumption that the foreman would do his duty and would not order him to operate the car unless it was safe. He was not required before obeying the orders of his foreman to stop and examine the car and see if everything was right. He testified that he did not know the way the kindling was loaded or that there was danger in operating the car. He was not obliged to be on the lookout for these things, but might rely on the judgment of his superior, and if the foreman was negligent and thereby he was injured he may recover, unless he failed himself to exercise such care as may be ordinarily expected of a person of ordinary prudence situated as he was."

There is little difficulty in distinguishing the Ward case from the case at bar. In the Ward case the short pieces of kindling had been piled above the hole in which the lever worked in such a way that it not only did, but might have been expected to work down in the open hole and cause the accident. That was negligence on the part of the foreman. In the case at bar, however, the sack of coal did not fall upon the machinery, and could not have done so because of the frame work surrounding the lever; and, according to appellant's contention, the accident was caused by the handle bar striking on the top of the sack of coal after it had toppled over on the floor of the car. In permitting Tutt to place his sack of coal upon the hand car in the position above indicated, the car was neither overloaded, or so loaded as to make it dangerous. This case is entirely dissimilar in principle, from the Ward case.

2. Moreover, if we should assume that the placing of the sack of coal upon the car was negligence upon the part of the appellee, there can nevertheless be no doubt that the appellant, who continued operating the car with full knowledge of the condition that existed, assumed the risk of the coal sack toppling over as it did. It was in full view of appellant, and if the accident to him was caused by its toppling over, he knew and could see as well as foreman McCarty, the likelihood of its falling. In the Ward case appellant did not know the way the kindling was loaded, or that there was danger in operating the car; whereas, in the case at bar Fitzpatrick knew all that McCarty could possibly have known; and if there was any danger in placing the coal sack where it was placed by Tutt, the danger was fully as obvious to Fitzpatrick as to anyone else. That it might possibly topple over from the shaking of the car was apparent to the most inexperienced person, and appellant had had an experience of six years as a section hand.

This case is controlled by the principle announced in Bradshaw's Admr. vs. L. & N. R. R. Co., 14 Ky. L. R., 638, where a recovery was sought and denied on behalf of a section hand who was thrown from a hand car and killed. It was alleged that Bradshaw's hand slipped from the lever, and he fell from the car owing to the overcrowded condition of the car. The petition failed to allege that Bradshaw did not know that the car was overcrowded. The lower court sustained a demurrer thereto; and in affirming that ruling, this court said:

"Now it is not alleged that the intestate did not know that the car was 'over crowded,' nor is there any inference to be drawn to that effect; on the contrary the inference is that if such was the fact he could and did see it and knew it. Such being the case, it was his right and duty to refuse to obey the orders of the section boss in that regard; but as he elected to obey, he took the risk of the over crowded condition of the car, and the appellee is not responsible for any injury to him caused thereby."

Again, in Norton vs. L. & N. R. R. Co., 16 Ky. L. R., 846, where a section hand who was operating a hand car was thrown off and injured by reason of a defective lever, the proof showed that the section hand knew of the condition of the lever, and had on the day of the

accident, assisted in an attempt to make the handle more secure. In holding that a non-suit had properly been ordered below, this Court said:

"The employe is not required to look for defects, but such as are patent or known to the employe, and if he still handles the machinery, when fully competent to judge of the danger, he must be held to have assumed the risk.

"In this case whether or not the fastening of the handle by the use of a nail was or not negligence was a question of fact, and if negligence, the appellant knew it was fastened in that manner and continued to use it."

To the same effect see B. F. Avery & Sons vs. Lung, 106 S. W., 865; Kirby v. Hillside Coal Company, 106 S. W. 278; Wilson vs. Chess & Wymond Co., 117 Ky., 567; and Duncan v. Gernert Bros. Lumber Co., 27 Ky. L. R. 1039.

In Wilson v. Chess & Wymond Company, supra, we used the following language:

"Whatever may be the moral obligation resting upon those who employ people in hazardous work to furnish them the safest possible means to protect them from injury, the law does not forbid a laborer's undertaking hazardous employment with full knowledge of its dangers, if he wants to. If he does, the law leaves the risk upon him, for he has assumed it. There is no feature of the law of negligence better settled than this. * * * The conditions were openly visible to the laborer. He had only to use his eyes, and his most common experience, and his earliest instincts, to fully appreciate the danger of his position."

The principle announced in Cumberland Telephone & Telegraph Company vs. Graves' Admr., 31 Ky. L. R. 972, and in Mason, Hauger & Coleman vs. Kenniston, 134 Ky., 844, relied upon by appellant, cannot, in our opinion, control the decision of this case, since it is apparent from each of said opinions that the plaintiff's right to recover therein was rested upon the fact that he did not know or realize the hidden danger to which he had been subjected.

Judgment affirmed.